**Ted A. LANE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16416.**

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1971.

Charles E. Grounds, Seminole, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Ted A. Lane, hereinafter referred to as defendant, was charged in the District Court of Pontotoc County, Oklahoma, with two offenses of Obtaining Cash Merchan-

dise by Bogus Check, and one offense of Escape. Defendant, with counsel, entered a plea of guilty to all three crimes, and was sentenced on February 13, 1968 to two five-year terms on the bogus check charges, and a two-year term on the escape charge. These terms of imprisonment in the state penitentiary were to be served consecutively.

Defendant filed an Application for Post Conviction Relief with the Court Clerk of Pontotoc County on August 28, 1970, and upon hearing the same, the trial court entered an order which denied Post Conviction Relief, and from said order, a timely appeal has been perfected to this Court.

The sole proposition asserts that the "guilty" pleas were involuntarily entered, and that the defendant did not understand the consequences of such pleas, or the punishment imposed.

Defendant testified at the Post Conviction Relief Hearing that he did not understand the meaning of the words "consecutive" or "concurrent," and that he entered a plea of guilty with the understanding that he would get a sentence of twelve years, but that the three different sentences would be run together, resulting in a single five-year sentence. Defendant now argues that because of his misunderstanding as to the terms imposed that his pleas of guilty were involuntarily entered.

We are of the opinion that the Record does not support the defendant's contention. A review of the Record of the proceedings indicates that the defendant was represented by counsel, who was present when the defendant entered his guilty pleas, and that the trial court apprised the defendant in accordance with the requirements of this Court, as set forth in Copenhaver v. State, Okl.Cr., 431 P.2d 669. The Record clearly shows that prior to accepting the defendant's pleas of guilty, the trial court meticulously informed the defendant that the court did not have to follow the recommendation of the District Attorney:

"BY THE COURT: All right, has there been any undue influence or compulsion by anyone—or coercion, by anyone to cause you to change your plea from 'not guilty' to 'guilty' in this case?

"BY THE DEFENDANT: No, sir.

"BY THE COURT: All right. Has there been any inducements, or offers or promises made to you, in order to get you to change your plea to 'guilty'—well, let me ask it this way: The District Attorney may or may not, have agreed to make a recommendation in this case, and the first thing that I want you to know is that—do you understand that the Court is not bound by any recommendations that the District Attorney might make, do you understand that?

"BY THE DEFENDANT: Yes, sir.

"BY THE COURT: And further, this Court will not accept a plea of guilty if you are entering a plea of guilty simply because the District Attorney has been agreeable or, is agreeable to making a recommendation, if in fact you are not guilty of the charge—do you understand that?

"BY THE DEFENDANT: Yes, sir.

"BY THE COURT: Now, I am not, necessarily objecting to any 'plea bargaining' but if you are pleading guilty for any reason other than the fact that you are guilty, I want to know that now —Is there any reason that you are pleading guilty other than the fact you are guilty?

"\* \* \*

"BY THE DEFENDANT: No, sir.

"BY THE COURT: And that is the only reason that you are pleading guilty, is that correct—the fact that you are guilty?

"BY THE DEFENDANT: Yes, sir.

"BY THE COURT: All right. Did you do the things charged against you in the Information?

"BY THE DEFENDANT: Yes, sir. (Tr. 40, 42)

Following receipt of defendant's guilty pleas, the District Attorney recommended the sentence of five years on each of the

bogus check charges and two years on the escape charge, the terms to run consecutively. Sentences were imposed by the court in accordance with the District Attorney's recommendation. The Record reveals that the testimony at the Post Conviction Relief Hearing does not support the defendant's argument that he understood the sentences were to run concurrently.

Defendant's attorney, at the time he entered his pleas of guilty, testified as follows:

"Q. All right now, would you just relate, Mr. Wadlington, the conversation pertaining to these pleas of guilty, with particular reference to what kind of a sentence he was to receive, or what kind of sentence was the District Attorney's office to recommend upon his pleas of guilty to these three charges?

"A. Well, he had a bunch of checks out at other places, and several 'Holds.' And so, the proposition was to try to wind it all up so that he wouldn't have any 'Holds' on him, and we could finish it all with this—with what was here and—well, as I remember it, I just asked Gordon what was the best that he could do, and he said, 'Well, if he will take twelve years, here, why, I will get—if he agrees to do that, why, I will get all of these other cases withdrawn, or I will do my best to.' Well, it was understood that we wouldn't enter a plea until—that he wouldn't enter a plea until these other cases were withdrawn—or, letters obtained stating that they would be and that there wouldn't be any 'Hold' on him.

"Q. And were these letters later received and shown to you?

"A. Yes, we had—I have got photocopies of the letters here in the file.

"Q. All right, now, let me ask you: With reference to this twelve-year sentence that would be recommended, what was your understanding as to how he would receive this twelve-year sentence?

"A. Well, the main thing was that it would be twelve years—just any way to do it. And that was completely understood—that was the deal that was made.

"Q. You mean, a total of twelve years to serve?

"A. Yes.

" * * *

"Q. Your memory was pretty clear insofar as this sentence is concerned?

"A. Oh, yeah. There wasn't any question about that, it was—that was the deal, and that is what we * * * I discussed it fully with him, and he agreed to take that in order to get rid of all them, including the fifteen holdovers.

"Q. And, I believe you say that you have copies of these letters, and that nearly all of them state in there 'twelve years?'

"A. Yes, the letters show that the proposition you made to the, and they say they would withdraw their complaints if he got that sentence—the biggest part of them say that, a sentence of twelve years."

Defendant's assertion as to his understanding that he was to serve only five years was further rebutted by testimony of defendant's father, John F. Lane, who testified as follows:

"Q. * * * Did you have any knowledge before he entered his plea as to what his understanding was as to what kind of a sentence he was going to get?

"A. No, sir, not any more than I came to visit Teddy one day, and he said that he thought they had talked about ten years. Now, that is the only information I got." (Tr. 60)

We are of the opinion that the defendant freely and voluntarily entered pleas of

guilty with full knowledge of the consequences of such plea. The Order Denying Petitioner's Application for Post Conviction Relief is affirmed.

BRETT and NIX, JJ., concur.